## STONG'S APPEAL.

Where part of the estate consists of obligations of heirs who receive the same in payment of their shares the administrator will not be allowed a commission of five per cent. upon the whole of the estate.

Appeal from the Orphans' Court of Montgomery County, No. 153 January Term, 1860.

This was an appeal by Philip Stong, administrator of Frederick Stong, deceased, from the decree of the Orphans' Court of Montgomery County, upon exceptions to the auditor's report, restating his account and distributing the balance in his hands.

Frederick Stong, father of the appellant, died at the age of 93 years, having been feeble for ten years before his death. He rented his farm to Philip Stong on shares and boarded with him. When Philip Stong filed his administration account he took credit therein for boarding, nursing and attention to the decedent in his lifetime for six years and four months, at $215 a year, making $1,361.66, to which exceptions were filed by some of the other heirs, and this, together with other accounts were referred to an auditor. The auditor decided in favor of the appellant's claim, and exceptions were filed to it, and the Court reduced this credit to $406.50. The accountant also claimed 5 per cent. commission, which was allowed by the auditor, but reduced to 2¾ per cent. by the Court.

The opinion of the Court was as follows, per

Smyser, P. J.:

We regret that we are not able to agree with the auditor in all the conclusions he has arrived at in regard to this case; but a careful deliberate scrutiny of the evidence, has resulted in satisfying our minds that if this report is confirmed as it stands, great injustice will be done to the other heirs of the decedent. And, in this, we refer more especially to the credit claimed by Philip Stong, the administrator, for boarding, nursing, and attending his father, the decedent during the last six years and four months of his life. The accountant claimed credit on. this account, for $1,361.66. The auditor, although admitting that he could be allowed for six years only, by reason of the statute of limitations being interposed, has increased the allowance to $1,404, or $42.34 more than the accountant himself claimed for a longer period. On the argument the counsel of Philip Stong admitted that he was confined to the sum claimed in the account and could not go beyond it. The question whether he is entitled to that, or to a less sum, and if so, how much less, or to any at all, is the principal point of this controversy. To judge of the correctness or incorrectness of the decision given by the auditor, we must look at the facts and the testimony.

Frederick Stong, the intestate, died in October, 1857. It appears that his son Philip, the administrator, for a period of

eight years and more, previously to the old man's death, had lived on his farm, in Worcester township, the old man living, and, as is alleged, boarding with him. During all this period, or at all events up to the spring of 1857, Philip had been farming the place on shares.

Mr. Landis gives it as his opinion that it was worth $4.50 per week to board, attend to, and take care of the old man, during the last six years of his life, by reason of his age, infirmities, &c. He was over 90 years of age when he died. He says that his board alone was worth $3 a week, thus estimating $1.50 for other care, trouble and attendance. The auditor has allowed the claim at this rate. We do not quarrel with this, although we think it higher than the whole evidence would, in our judgment, warrant; still the error, if there be one, is not so apparent and clear as to make it our duty to disturb the report on *this* ground. There are others, as will be seen presently, which leave us no alternative.

Mr. Landis says the property would have rented for $150 a year. Charles Hendricks says perhaps a man would give $125 or $150, but that would be a big rent. Amos Hendricks and Jacob Anders both say it was worth $150.

Assuming (as from this testimony we must) $150 to be a fair rent for the premises, and presuming that the value of the landlord's share in kind would be no less; we think the great mistake made by the auditor was in allowing the full claim for board, attendance, &c., and neither charging Philip with any rent for the six years, nor striking a balance between it and the board, and crediting Philip with the excess only. There is no evidence in the case to show payment of rent, any more than payment of board. The only testimony that looks like a payment of rent, is that of Frederick Stong, Jr. He says that on several occasions he saw Philip share the proceeds of things he sold off the place with the old man; and, from this, the auditor deduces the presumption that they settled for the old man's share of the produce as they went along. But the auditor lost sight of another presumption, equally strong, viz.: that a man will not day by day, and year by year, keep on paying money to another, who is at the same time largely

his debtor, that debt all the time running on, not only undiminished, but increasing every day. The claim of Philip for board was increasing with every additional day the old man lived with him; and he might have charged interest, also, thus still further swelling the amount of his father's indebtedness; or, if he did not, then he was a daily loser by the suspension of the debt and delay of payment. What more natural then for Philip, under those circumstances, instead of paying rent punctually, to have applied the sums he owed for rent towards the reduction of his own claim. Nor does the nature of the contract in regard to the rent, viz.: that it was to be rendered in kind, create any difficulty in the way of this strong natural presumption, for the testimony of the witness is that it was the money got for the produce, the market money and not the produce itself that was divided.

But, the principal difficulty in the way of sustaining the conclusion of the auditor yet remains to be noticed.

The same witness relied on as proving the payment of the rent, further testified as follows: "I always understood that Philip farmed on the shares, and they all lived on the place;" and, on further cross-examination, he says: "Philip told me that he farmed the place on the shares, and divided the money —he told me that what they had to settle, that there was not very much of it; *they would live out of it* and *then* divide the money."

Now, what does this prove? If they lived in common out of the produce of the farm, and divided the proceeds of the overplus only, it follows, of course, that Philip could have no claim for more boarding, unless the produce of the place was insufficient to keep them; which could not be the case, as there was, according to the witness, an overplus to be divided. There is, therefore, this dilemma. If the testimony of Frederick Stong is credited, then the same evidence that proves the payment of the rent, at the same time, *uno et eodem flatu*, disproves the existence of any claim for boarding. If it is discredited, then there is no proof that the rent was ever paid and Philip, when he insists on his demand for board, cannot in conscience object to the rent being made a set off.

This, of course, would not exclude so much of the claim as is for nursing, attendance, and services of that nature, not pertaining to the old man's maintainance or living. According to Mr. Landis, on whom the auditor seems mainly to have relied, this would be $1.25 a week. That, for six years, would amount to $468, the utmost to which on this basis of computation, Philip would be entitled for extra services beyond boarding his father, taking the board and rent as mutually extinguishing each other, up to the time of his death. But Philip would still owe part of the rent for the year in which his father died, viz. : for that part between October, 1857, and April, 1858, to the estate, because after the old man's death, the mutual extinguishers of the two claims would cease—the one being determined by death, the other running on. As the renting seems to have been on equal shares, from what Frederick testifies, and as we have supposed the landlord's share to be worth $150, there would remain, say $62.50, or five-twelfths, of the year's rent to be accounted for. That would leave $406.50 as the balance due for all boarding, and attend ance, &c., after settling all rents to April 1, 1858. This still leaves the rent from that period undisposed of ; but as that belongs to the heirs personally, and is not a debt due the estate, it cannot be introduced here. Philip must settle that with them hereafter.

We attain substantially the same result if we do (what we are not warranted in doing, however,) to wit, reject the testimony of Frederick Stong, and treat the rent and boarding, &c., as both due and unsettled for the six years preceding old Frederick Stong's death. For in that event we have $1,404 as the price of six year's board at $4.50 a week. The rent for six years would be $900 to which is to be added the rent for the residue of the year in which testator died, say six months, at $150 a year, would be $75 ; because Philip owes that to the estate and not to the heirs, just as much as he does any of the preceding rent. That would leave the balance due for board of $429.

Or, try it another way. The boarding at $4.50 would be $234 a year. Excess over rent $84 ; which, for six years, would be $504. Deduct the half year's rent from the old man's death

to the end of the year, not included in the above calculation, but due the estate on a contract of rent with the old man in his lifetime, and we again have $429.

I have no doubt, however, that the first calculation gives the true result, because it gives effect to the *whole* of Frederick Stong's testimony, which, as already said, we discover no sufficient reason for rejecting ; and is also most in accordance with the reasonable probabilities of the case, founded on the occasional payments of half the market money by Philip to his father, which he would hardly do, and permit his own debt not only to stand, but go on accumulating.

I have not noticed the testimony of Susan Johnson as to the expressions used and declarations made by the old man, the fall before Mrs. Stong's death, because, firstly, they seem to have been made beyond the period of statutory limitation, and therefore, can have no effect as a recognition of indebtedness ; and secondly because the old man seems, from the statement of the witness, to have then been almost imbecile and childish, assenting to and reiterating, parrot-like, whatever his wife said. As her declarations, merely, they are of no account ; and, although made in his presence, cannot be regarded as his presumptively, for the reason just given. We think that the item of $1,404 for boarding, &c., as allowed by the auditor in his restatement of the account, should be reduced to $406.50. It is so reduced accordingly.

The commissions, too, ought, we think, to be reduced. The accountant claims, and the auditor allows 5 per cent. on the whole amount of the personal estate.

It is time that the ground on which commissions are allowed should be understood. There is no legal right to that or any other fixed and uniform rate. Commissions are allowed as a compensation for services and responsibility ; and 5 per cent. has been generally adopted, because, in most cases, it comes about as near actual compensation as is necessary or desirable. Still the Courts do not hold themselves bound by this or any other rate ; but will increase or diminish it, as a just and reasonable remuneration may require. Here the whole estate is $3,626.37.

Of this sum, $3,267.25 is in bonds and obligations of the heirs and distributees, which they have all, by the agreement of 10th January, 1859, agreed to receive from the administrator as cash. He will, therefore, be under no necessity of collecting them, and the disbursement will be a mere transfer. We note, too, that a special credit is taken in the account for his actual expenses in attending to the duties of the trust. We think he will be amply remunerated by being allowed $100, which is about at the rate of 2¾ per cent.

We therefore reduce the commissions to [that sum.

Stong then appealed from the decree of the Court.

*N. P. Corson and James Boyd, Esqs.*, referred to the testimony and argued that the decree in reducing the amount claimed for board, &c., was erroneous. As to the second error they cited that 5 per cent. is a proper compensation for an administrator; Pusey vs. Clemson, 9 S. & R., 209; Miller's Estate, 1 Ash, 323.

The Supreme Court affirmed the decree of the Orphans' Court, on January 30, 1860, in the following opinion,

Per Curiam :

This whole case has been discussed with such clear good sense, and with so much justice in the opinion of the learned judge of the Orphans' Court, that we see no occasion to add anything to it. Even after studying the very carefully prepared argument submitted by the appellant's counsel, we remain convinced that no injustice has been done him; at least none reqiring correction here.

Decree affirmed at the costs of the appellant.